# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DESHAUN TORREGANO                                    CIVIL ACTION

VERSUS                                                        NO. 14-1568

DARREL VANNOY, WARDEN                              SECTION: "H"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Deshaun Torregano, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On September 16, 2010, he was convicted of armed robbery under Louisiana law.[1] On October 14, 2010, he was sentenced to a term of eighteen years imprisonment.[2] On September 26, 2012, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and

---

[1] State Rec., Vol. 2 of 4, transcript of September 16, 2010, p. 138; State Rec., Vol. 1 of 4, minute entry dated September 16, 2010; State Rec., Vol. 1 of 4, jury verdict form.
[2] State Rec., Vol. 2 of 4, transcript of October 14, 2010; State Rec., Vol. 1 of 4, minute entry dated October 14, 2010.

sentence.[3]  The Louisiana Supreme Court then denied his related writ application on April 5, 2013.[4]

In the interim, petitioner filed an application for post-conviction relief with the state district court on April 29, 2011.[5]  That application was denied on August 8, 2013.[6]  His related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on September 26, 2013,[7] and by the Louisiana Supreme Court on May 23, 2014.[8]

On June 30, 2014, petitioner filed the instant federal application seeking habeas corpus relief.[9]  The state has filed a response in opposition, conceding that the application is timely, but arguing that petitioner's claims should be denied on the merits.[10]  Petitioner has filed a reply to the state's response.[11]

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[3] State v. Torregano, 101 So.3d 76 (La. App. 4th Cir. 2012); State Rec., Vol. 1 of 4.
[4] State v. Torregano, 110 So.3d 1074 (La. 2013); State Rec., Vol. 1 of 4.
[5] State Rec., Vol. 1 of 4.
[6] State Rec., Vol. 1 of 4.
[7] State v. Torregano, No. 2013-K-1278 (La. App. 4th Cir. Sept. 26, 2013); State Rec., Vol. 4 of 4.
[8] State ex rel. Torregano v. State, 140 So.3d 721 (La. 2014); State Rec., Vol. 4 of 4.
[9] Rec. Doc. 4.
[10] Rec. Doc. 16.
[11] Rec. Doc. 17.

state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the

United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard
> against *extreme malfunctions* in the state criminal justice systems, *not a substitute
> for ordinary error correction through appeal.  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking in justification that
> there was an error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of

this case as follows:

> On the evening of February 7, 2009, Austin Ward was robbed at gunpoint
> while walking home from a Mardi Gras parade.  Mr. Ward testified that, around
> 9:00 p.m. that night, he walked alone from the French Quarter to his home in a

5

nearby neighborhood.  As he neared his house, he heard footsteps and the voices of young men behind him.  He turned and saw three young men who he thought were following him.  He continued on his way, turned around again and noticed that the men were a little closer to him.  When he was about fifteen feet from his front doors, he heard one of the young men command him to turn around and give him his money.  Because he believed he could still make it to his home, he continued forward.  The same young man again demanded that he turn around and give him his money.  When he turned, he saw a young man standing about four feet from him, pointing a gun at him.[FN1]  Two other young men stood behind the gunman, one standing three to four feet from him and the other in the street, about nine to ten feet away from him.  While the street lighting was apparently poor,[FN2] Mr. Ward testified that he was able to see the faces of both the gunman and the man standing closer behind him, who Mr. Ward identified as defendant.  He was not, however, able to see the third man in the street.

> [FN1]  The gunman's identity is being withheld as he was a juvenile at the time of the robbery.  He will be referred to herein as the "gunman."

> [FN2]  Mr. Ward testified that the street light directly above where he stood worked intermittently and "flickers on and off every few seconds."  However, his house had two fluorescent lights "which provides much of the illumination of the area in front of [his] house."  He responded "yes" when asked whether it was "clear enough for [him] to see the faces of those two individuals."

Mr. Ward reached into his pockets and pulled out either his keys or cell phone and he saw defendant gesture to the gunman, who again demanded Mr. Ward's money.  He then removed his wallet from his pocket, threw it to the ground and saw defendant pick it up.  Shortly thereafter, the three young men fled the scene on foot.  Mr. Ward called 911,[FN3] and an investigating officer came to the scene of the robbery.  Mr. Ward testified that he described all three young men to the officer.

> [FN3]  The substance of the 911 call is at issue in this matter and will be addressed more fully below.

 A few days later, Mr. Ward met with Detective Lester Marshall and gave him a drawing that he made of the gunman.[FN4]  He later met with Officer Stephanie Taillon, who works for the New Orleans Police Department in preparing composites, photographs and computer sketches.  With Mr. Ward's help, she created a color composite of the gunman.

[FN4]  Mr. Ward is an artist, having over eight years of academic
art training.

Several days after the robbery, Mr. Ward was driving in his neighborhood
when he saw someone who he thought was the gunman and defendant.  As he got
closer to and passed them, he "was sure that they were [sic] two of the three" who
had robbed him.  He happened upon a police car parked on the street, explained the
situation and together, they returned to where Mr. Ward had seen the two young
men, who were no longer in the area.  Mr. Ward continued to see the two together
on several occasions over the next few months and contacted Detective Marshall
each time he saw them.

On May 6, 2009, Mr. Ward was again driving in his neighborhood when he
encountered the scene of an accident with an overturned vehicle in the middle of
the street.  A crowd had gathered and as Mr. Ward scanned the crowd, he noticed
both the gunman and defendant.  He approached a police officer on the scene and
positively identified the gunman and defendant.  As the gunman was apprehended
first, defendant "attempt[ed] to try to walk away," but was apprehended as well.[12]

## Petitioner's Claims

## Sufficiency of the Evidence

In his first three related claims, petitioner challenges the sufficiency of the evidence to

support his conviction.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected

petitioner's contention that the evidence was insufficient, holding:

Defendant filed a *pro se* appellate brief, which was later supplemented by
the brief of his court-appointed appellate counsel.  Both briefs essentially raise one
assignment of error, that the evidence was insufficient to support defendant's
conviction of armed robbery.  Defendant relies on two arguments:  (1) that Mr.
Ward's identification of defendant was unreliable and (2) that Mr. Ward's "in-court
identification based on an internet search did not rule out a reasonable probability
of misidentification."

The standard of appellate review of a sufficiency of the evidence claim was
set forth in the U.S. Supreme Court decision of Jackson v. Virginia, 443 U.S. 307,
318, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560 (1979), which explained that "the
critical inquiry on review of the sufficiency of the evidence to support a criminal
conviction must be not simply to determine whether the jury was properly
instructed, but to determine whether the record evidence could reasonably support
a finding of guilt beyond a reasonable doubt."  However, the reviewing court need

---

[12] State v. Torregano, 101 So.3d 76, 78-79 (La. App. 4th Cir. 2012); State Rec., Vol. 1 of 4.

7

"ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. (Citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (Citation omitted, emphasis supplied). The Louisiana courts have consistently applied this standard of review for the sufficiency of evidence. See, e.g. State v. Marcantel, 2000-1629 (La. 4/3/02), 815 So.2d 50; State v. Fontenot, 2011-0742 (La.App. 4 Cir. 2/22/12), 87 So.3d 154; State v. Moore, 2011-0025 (La.App. 4 Cir. 9/7/11), 75 So.3d 22; State v. Boyd, 2007-0534 (La.App. 4 Cir. 12/5/07), 972 So.2d 1240.

This appellate review of the evidence does not diminish the importance of the jury's function, as our jurisprudence also indicates that the determination of the weight of the evidence is a question of fact which rests solely with the jury who may accept or reject, in whole or in part, the testimony of any witnesses. See: State v. Silman, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, 35. Accordingly, it is not our function to assess credibility or re-weigh the evidence and we "may impinge on the factfinding function of the jury only to the extent necessary to assure that the defendant has received due process of law." State v. Bordenave, 95-2328, p. 2 (La. 4/26/96), 678 So.2d 19, 20.

We recently reiterated the standard for determining whether the prosecution has sufficiently proven identity in State v. Anderson, 2010-1589, p. 7 (La.App. 4 Cir. 2/15/12), 85 So.3d 747, 752-753:

> When the key issue is the defendant's identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. State v. Weary, 2003-3067, p. 18 (La. 4/24/06), 931 So.2d 297, 311; State v. Kelly, 2010-0853, p. 6 (La.App. 4 Cir. 12/12/10), 54 So.3d 1159, 1163. In such a case this Court examines the reliability of an identification using the five factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which include: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. State v. Jones, 2010-0018, p. 7 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 832, writ denied, 2010-2683 (La. 4/25/11), 62 So.3d 85; State v. Mathieu, 2007-0204, p. 16 (La.App. 4 Cir. 2/27/08), 980 So.2d 716, 725.

Importantly, though, in proving identity, the trier of fact may rely on a single witness. As we noted in Anderson, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. Id. at p. 7, 85 So.3d at 753, citing, State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306.

8

We are not to disturb the factfinder's decision concerning the credibility of a witness unless it is clearly contrary to the evidence.  Id.; State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996.

In this matter, defendant relies heavily on the 911 tape recording as suggesting that Mr. Ward could not reasonably identify him as one of the perpetrators of the robbery.  In the recording introduced at trial, Mr. Ward gave a description of the gunman as being "between the ages of ten and twelve, five foot, two inches, gray hooded with blue jeans."  And, when asked about the other two, Mr. Ward stated that he "did not get a good look at them."  He also stated that "the best look [he] had was of the one who had the gun."  At trial, he admitted that he only drew a picture of the gunman but explained:

> I thought at the time, probably naively, that if I were to focus on a rendering of the boy that I felt that I could most confidentially [sic] depict ...

> What I mean is that I don't honestly at any point feel like I could have accurately rendered [defendant's] face.  However, I know from my years of training, academic training and just my years of living that to recognize someone you don't have to be able to in detail depict the features of their face.  Their face becomes imprinted in your head, and they almost become -- it is inexplicable.  They are there.  You know who they are.  You see them.  And, you realize that you know them.  And, so, I couldn't make a drawing of [defendant].  I recognized him, though."

Later in his testimony, he reiterated:

> ... there is a difference in my eyes between being able to accurately depict a face from memory and simply recognizing them.  Recognition, I think, you know, there is a lot of weight to simply being able to recognize someone.

Mr. Ward clarified that he did not give a physical description of defendant in the 911 call, placed about ten minutes after the robbery, describing it as a "pressured moment."  Significantly, however, he did give a description of him to the investigating officer.  He described his "general habitues [sic], his height, his weigh [sic], skin color" and his hair as "short dredlocks."

Officer Hillary Smith, who was the first officer to respond to the 911 call and who prepared an incident report corroborated that Mr. Ward gave a description of defendant on the night of the robbery.  She testified that Mr. Ward described defendant's clothing as "dark" and, while she neglected to document it in her report, when asked whether Mr. Ward gave her "any description as to complexion of any of the individuals or hair style of any of the individuals," she responded that she

was "certain that he did give a clothing and facial appearances." (Her answering in the plural suggests that Mr. Ward gave gave more than one description of same.) Officer Marshall also testified that Mr. Ward described defendant by his height and weight.

Mr. Ward was very clear in his testimony. He stated that he "very plainly" saw defendant's face at the time of the robbery. He looked at defendant after seeing the gunman to see whether he, too, was holding a gun. He looked at him when he made head motions at the gunman. And he looked at him when he went to retrieve Mr. Ward's wallet.

Mr. Ward was clearly confident in his identification of defendant and the jury clearly found his testimony credible. Defendant called several witnesses, two of whom are his sisters and one of whom is related to one of his sisters, who testified that defendant had been at a family party on the night of the robbery. As the jury found defendant guilty, it clearly found defendant's witnesses to lack credibility. The jury, too, disregarded defendant's own testimony as well. The jury did so perhaps because defendant denied that he "hung out" with the gunman, while Mr. Ward testified that he saw them together on several occasions over the period of a few months.

Finally, we find no merit to defendant's argument that Mr. Ward's identification of defendant was based on an internet search. Mr. Ward did testify that he had been looking for defendant on the internet, but when specifically asked whether it was "to make sure that [he] would be certain of [his] in-court identification," he testified that "that is not the reason why."

As the appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence, as per <u>State v. Robinson</u>, 2010-0885, p. 7 (La.App. 4 Cir. 12/21/10), 54 So.3d 1208, 1213, we do not find Mr. Ward's identification to be unreliable. Nor do we find that the jury's conviction to be clearly contrary to the evidence.[13]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[14]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Taylor</u>

---

[13] <u>State v. Torregano</u>, 101 So.3d 76, 79-81 (La. App. 4th Cir. 2012); State Rec., Vol. 1 of 4.
[14] <u>State v. Torregano</u>, 110 So.3d 1074 (La. 2013); State Rec., Vol. 1 of 4.

v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d

639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

     As correctly noted by the Louisiana Fourth Circuit Court of Appeal, claims of insufficient

evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307

(1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the

relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether

the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a

*rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001)

(quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v.

Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting

a sufficiency of the evidence challenge simply because the federal court disagrees with the state

court. ...  Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be mistaken,

but that they must nonetheless uphold.").  Moreover, because the state court's decision applying

the already deferential Jackson standard must be assessed here under the strict and narrow

standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact

"twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v.

Johnson, 132 S. Ct. 2060, 2062 (2012).

     Further, it must be remembered that in these federal proceedings, *only* the Jackson standard

need be satisfied, *even if* state law would impose a more demanding standard of proof.  For

example, the state court opinion references Louisiana's rule that the state is required to negate any reasonable probability of misidentification; however, that rule, which is not dictated by <u>Jackson</u>, simply does not apply here. <u>Williams v. Cain</u>, 578 Fed. App'x 462, 463-64 (5th Cir. 2014).

In the instant case, the state presented the victim's testimony, in which he positively identified petitioner as one of the perpetrators. On the other hand, petitioner and his witnesses state that he was not involved in the crime. Therefore, the question was one of credibility. However, where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("[U]nder <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of review."); <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); <u>McCowin v. Scott</u>, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); <u>Phillips v. Cain</u>, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), <u>adopted</u>, 2012 WL 2565025 (E.D. La. July 2, 2012); <u>Picou v. Cain</u>, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Moreover, the fact that the victim was the only witness positively connecting petitioner to the crime is not determinative. A single eyewitness identification, if found credible by the trier of fact, is constitutionally sufficient to prove identity and support a conviction. <u>See</u> <u>United States v. King</u>, 703 F.2d 119, 125 (5th Cir. 1983).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel.  Citing <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the state district court denied that claim on the merits.[15]  Thereafter, the Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[16] and the Louisiana Supreme Court denied relief without assigning additional reasons.[17]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

---

[15] State Rec., Vol. 1 of 4.

[16] <u>State v. Torregano</u>, No. 2013-K-1278 (La. App. 4th Cir. Sept. 26, 2013); State Rec., Vol. 4 of 4.

[17] <u>State *ex rel.* Torregano v. State</u>, 140 So.3d 721 (La. 2014); State Rec., Vol. 4 of 4.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation

marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthewson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Here, petitioner argues that counsel failed to interview and subpoena witnesses, otherwise adequately investigate the case, and present a defense of actual innocence.  With respect to the uncalled witnesses, petitioner argues that his counsel should have interviewed Wesley Pipkins, Garrick Pipkins, and Billy McCormick.  Petitioner opines that Wesley Pipkins was the individual who robbed the victim and, therefore, could have testified that petitioner had no knowledge of and did not participate in the crime.  Petitioner further states that Garrick Pipkins and Billy McCormick were with petitioner at the time of the crime and could testify that he was not involved.

The problem, however, is that petitioner's assertions are unsupported by even a scintilla of evidence.  As an initial matter, the Court notes that petitioner has presented no actual evidence showing that defense counsel failed to interview the proposed witnesses.  Nonetheless, even if petitioner were able to establish that fact, that alone would not suffice.  Petitioner must further establish that the proposed witnesses would in fact have supported his version of events if they

had been interviewed, and he has utterly failed to make that showing.  That defect is fatal, because a petitioner's bare speculation as to what additional investigation would have revealed is insufficient to prove the prejudice required to prevail on such a claim.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was ineffective for failing to call the purported witnesses to testify at trial.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, again, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of

ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

To the extent that petitioner argues that counsel failed to perform an adequate investigation in other respects so as to uncover evidence establishing petitioner's actual innocence, that contention fares no better. Again, petitioner has not established that counsel's investigation was in fact inadequate – on the contrary, petitioner has provided no evidence whatsoever as to what investigative steps counsel took or failed to take. Without such evidence, he cannot show that counsel performed deficiently.

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice *actually* resulted from the purportedly inadequate investigation. To make that showing, he must point to evidence in the record demonstrating that further investigation would have revealed additional information beneficial to the defense. See <u>Moawad v. Anderson</u>, 143

F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D.La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec.11, 2008).  Here, he has not shown that any such beneficial information would have been revealed by further investigation; rather, his assertions are entirely speculative and unsupported by any evidence whatsoever.  And again, it is beyond cavil that such bare speculation does not suffice to meet his burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Petitioner next argues that his counsel failed to adequately challenge the credibility of the victim.  As an initial matter, the Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Moreover, courts are not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, they are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  It is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.  Even the best

criminal defense attorneys would not defend a particular client in the same way." <u>Id</u>. In any event, petitioner has not identified any relevant questions that counsel failed to ask on cross-examination. Moreover, the Court has reviewed the transcripts in their entirety and finds that counsel's cross-examination and attempts to challenge the victim's credibility were not deficient and that petitioner was not prejudiced by counsel's performance.

Based on the foregoing, it is clear that the state court ruling that petitioner failed to meet his burden of proof with respect to his ineffective assistance of counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, petitioner's claim should be denied.

## **<u>Cumulative Error</u>**

Lastly, petitioner argues that he is entitled to relief when the errors in his case are considered cumulatively. However, the United States Fifth Circuit Court of Appeals has long expressed its disfavor of such claims in federal habeas corpus proceedings. For example, the Fifth Circuit has noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do. Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law. 28 U.S.C. § 2254. [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.

<u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987).

Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances.  The Fifth Circuit noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  *Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.*  Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) (emphasis added); see also Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) ("[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); Martinez-Perez v. Dretke, 172 Fed. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was *no* error ... there was *no* cumulative error." (emphasis in original)).  In the instant case, petitioner has not shown that any of his individual claims have merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when he has not established that the cumulative effect of the alleged errors rendered his trial fundamentally unfair.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Deshaun Torregano is **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

New Orleans, Louisiana, this twenty-ninth day of June, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[18] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.